*Fee Due*

Name: Alexander J. Carlos

Address: P.O. Box 770,
Susanville, CA, 96127
Susanville State Prison
C.C.C

CDC or ID Number: #BN5303

HC-001

FILED
CLERK, U.S. DISTRICT COURT

MAR - 4 2022

CENTRAL DISTRICT OF CALIFORNIA
BY    KMH    DEPUTY

First Street Federal Courthouse
350, W 1st Street, STE 4311
Los Angeles, CA, 90012-4701

*(Court)*

Alexander J. Carlos
Petitioner

vs.

Superior Court of California
County of Los Angeles
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. 2:22-CV-1513-FLA-PVC

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

---

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original of the petition and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

---

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2018). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page 1 of 6

Form Approved for Optional Use
Judicial Council of California
HC-001 [Rev. January 1, 2019]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.
Cal. Rules of Court, rule 8.380
www.courts.ca.gov

HC-001

**This petition concerns:**

[✓] A conviction      [ ] Parole

[✓] A sentence      [ ] Credits

[ ] Jail or prison conditions      [ ] Prison discipline

[ ] Other (specify): _____

1. Your name: Alexander J. Carlos

2. Where are you incarcerated? C.D.C.R. Susanville State Prison - C.C.C

3. Why are you in custody? [✓] Criminal conviction    [ ] Civil commitment

*Answer items a through i to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

#1. PC 212.5(c)[a] - #2. PC 212.5(c)/ATT[63]/PC 12022 (b)[1][0i]
#3. PC 212.5(c)[a] - #4. PC 243(d)[0i] - Two 2nd Degree robberies
one attempted Robbery 2nd degree w/use of a deadly weapon
and one Battery with Serious Injury.

b. Penal or other code sections: PC 212.5(c)[a] - PC 212.5(c)/ATT[63] - PC 12022(b)[1]

c. Name and location of sentencing or committing court:
Los Angeles - North Valley District
900 Third Street, San Fernando, CA, 91340

d. Case number: PA093425

e. Date convicted or committed: 03/03/2020

f. Date sentenced: 03/03/2020

g. Length of sentence: 7 years 0 months - Amended/Modified

h. When do you expect to be released? 2023

i. Were you represented by counsel in the trial court? [✓] Yes   [ ] No   *If yes, state the attorney's name and address:*
Leslie Warren - Public Defender
Office of the Public Defender 900 Third Street, Suite 2041
San Fernando, CA, 91340

4. What was the LAST plea you entered? *(Check one):*

[✓] Not guilty    [ ] Guilty    [ ] Nolo contendere    [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[✓] Jury    [ ] Judge without a jury    [ ] Submitted on transcript    [ ] Awaiting trial

HC-001

6.  GROUNDS FOR RELIEF
    **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

Public Defender refused to cooperate and provide me
access to crusial evidence pertaining to case and
defense strategy. Both Judges failed to intervene and
instead used an improper use of power to deny my
**MARSDEN** Motion to dismiss preliminary and trial Council.
Refusal by a state employee to hold another state
employee to an ethical and professional standard.

a.  Supporting facts:
    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.

Public Defender refused to cooperate with my decisions
as her Client refusing to provide crusial documents
pertaining the case and Defense Strategy.

Both Judges refused to grant **MARSDEN** Motion to dismiss
Council despite lack of communication and lack
of Cooperation.

b.  Supporting documents:
    Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

- Ground 1 Extended - 4 pgs          • Marsden 1 - 12 pgs
- Ground 2 Extended - 2 pgs          • Marsden 2 - 7 pgs
- Declaration of Actions Requested - 1 pg     • Volume 1 - 7 pgs
                                      • Volume 2 - 9 pgs

c.  Supporting cases, rules, or other authority *(optional)*:
    (Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

HC-001

**7.** Ground 2 or Ground _____ *(if applicable):*

Trial Council Failed to Cooperate with my decision to take advantage of key witness statements in my favor when Marzin Motion was made to dismiss trial Council both Judges again used an improper use of power and denied my Motion based on assumptions and "Personal experiences" not facts and refused to allow me to exercise my right to represent myself in pro per status.

**a.** Supporting facts:

Trial Council refused to subpoena witness's during Jury trial despite my decision to do so. Trial Judge agreed in the logic of my decision yet refused to grant Marzin Motion to dismiss despite refusal to Cooperate by trial Council.

Both Judges used assumptions to Justify reasons not to grant Marzin Motion and ultimately used improper use of power to unlawfully explain the details of Proceeding in Pro Per status, blatantly violating my right to represent myself.

**b.** Supporting documents:

- Ground 1 Extended - 4pgs
- Ground 2 Extended - 2pgs
- Declaration Of Actions Requested - 1pg
- Marsden 1 - 12pgs
- Marsden 2 - 7pgs
- Volume 1 - 7pgs
- Volume 2 - 9pgs

**c.** Supporting cases, rules, or other authority:

HC-001

8. Did you appeal from the conviction, sentence, or commitment? ☑ Yes ☐ No    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"):
Court of Appeal Second Appellate District State of California

b. Result: Judgment remanded with instruction    c. Date of decision: May 26, 2021

d. Case number or citation of opinion, if known: PA093425 / B307801

e. Issues raised: (1) Ineffective Trial Council

(2) Inadmissable Testimonial Hearsay

(3)

f. Were you represented by counsel on appeal? ☑ Yes ☐ No    If yes, state the attorney's name and address, if known:
Michael C. Sampson #Bar No. 296503  7960B Soquel Drive, PMB 117, Aptos, CA, 95003

9. Did you seek review in the California Supreme Court? ☑ Yes ☐ No    If yes, give the following information:

a. Result: Judgment Affirmed, Petition Denied  b. Date of decision: August 11, 2021

c. Case number or citation of opinion, if known:

d. Issues raised: (1) Ineffective Trial Council

(2) Inadmissable Testimonial Hearsay

(3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759):

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Dexter* (1979) 25 Cal.3d 921, 925.) Explain what administrative review you sought or explain why you did not seek such review:

N/A

b. Did you seek the highest level of administrative review available? ☐ Yes ☐ No
*Attach documents that show you have exhausted your administrative remedies.* (See *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court, including this court? (See *In re Clark* (1993) 5 Cal.4th 750, 767–769 and *In re Miller* (1941) 17 Cal.2d 734, 735.)
☐ Yes  *If yes, continue with number 13.*  ☑ No  *If no, skip to number 15.*

13. a. (1) Name of court: _____ N/A _____

(2) Nature of proceeding (for example, "habeas corpus petition"): _____

(3) Issues raised:  (a) _____

(b) _____

(4) Result (attach order or explain why unavailable): _____

(5) Date of decision: _____

b. (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised:  (a) _____

(b) _____

(4) Result (attach order or explain why unavailable): _____

(5) Date of decision: _____

c  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____ N/A _____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Robbins (1998) 18 Cal.4th 770, 780.)

I was only recently notified of the decision by the Supreme Court to deny my review as of 2/5/22. Even though the decision was made August of 2021.

16. Are you presently represented by counsel? ☐ Yes  ☑ No    If yes, state the attorney's name and address, if known:

I do not have enough money to hire a lawyer, but would like one appointed for instructional purposes only.

17. Do you have any petition, appeal, or other matter pending in any court? ☑ Yes  ☐ No    If yes, explain:

I have several appeals at the administrative level in C.D.C.R office of Appeals and Grievances against staff inciting violence, Retaliation, misconduct and poor unethical standards.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

The State Courts and appointed attorneys continuely refuse to bring up specific details regarding Court misconduct that I have argued. A federal hearing will bypass conflicts of interest within the State Courts.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 2-26-22      ►      _____
                                      (SIGNATURE OF PETITIONER)

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Alexander J. Carlos_, declare:

I am over 18 years of age and a party to this action. I am a resident of _C.C.C., Susan-_ _-Ville State Prison_ Prison, in the county of _Lassen_

State of California. My prison address is: _P.O. Box 2210, Susanville,_ _CA, 96127_

On _February 27, 2022_,
(DATE)

I served the attached: _Habeas Petition 6pgs, Supporting Documents 6pgs,_ _Transcripts 36pgs,_
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

_First Street Federal Courthouse - 350 W. 1st Street, STE_ _4311, Los Angeles, CA, 90012-4701_

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _02-27-22_
(DATE)

_____
(DECLARANT'S SIGNATURE)

CCC-F1  (Rev. 10/15)

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Alexander J. Carlos' #BN5303_, declare:

I am over 18 years of age and a party to this action. I am a resident of _C.C.C.,_
_Susanville State_ Prison,

in the county of _Lassen_

State of California. My prison address is: _P.O. Box 2210,_
_Susanville, CA, 96127_

On _February 27, 2022_,

I served the attached: _Habeas Petition 6pgs, Supporting Documents,_
_6pgs, Transcripts 36 pgs_
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

_Los Angeles Superior Court, - 900 Third Street,_
_Suite 2041, San Fernando, CA, 91340_

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _02-27-22_
(DATE)

_____
(DECLARANT'S SIGNATURE)

CCC-F1 (Rev. 10/15)

Ground 1 Supporting Facts Extended.

To begin it is obvious reading the transcripts that I did not want Leslie Warren appointed public defender to represent me in court that is a fact {M1: page 3 lines 15-22} {M1: page 4 Lines 13-16} {M1: page 5 Lines 5-6} {V2 page 190-191 Lines 27-28/1-13} {V2: page 193 Lines 3-4}

My first concern was her inability to properly advice and provide me the information on my case Discovery. My request for the discovery was crusial to an appropriate alibi/defense. I had informed my attorney that I was intoxicated heavily {M2 pg 204-Lines 5-8} before the hours of all three alleged incidents. Details provided in the Discovery would help me better understand the allegations to either    an accurate alibi or sum up an admission of guilt for a lesser sentence.

Ms. Warren and Judge Zacky's reasoning for not handing over a copy of the Discovery {M1: pgs 5-6 Lines 22-28/1-4} {M2: pg 204 Lines 24-28} are not facts they are assumptions. For these assumptions to be used as grounds for denying my request for a discovery and to deny my Marzin Motion is unethical and unfounded in relating to facts.

{M1: pgs 5-6 Lines 22-28/1-4} and {M2: pg 204 Lines 24-28}

1

are not facts but more paranoid assumptions that a provided Discovery will fall into the hands of an informant or that I will use it to retaliate against witnesses. To say that the discovery in question did have crusial information pertaining to my case that would help me better understand the allegations in regards to times, dates, statements and material evidence is a fact.

For Judge Zacky to claim that I had a firm grasp of the facts {M1 pg 10 Lines 17-19/23-25} is another innapropriate assumption not a fact. To assume that I have the ability to memorize all case factors, times, dates, witness statements, locations material evidence through verbal exhibits is not practacle whatsoever.

As I clearly stated on {M1 pg 9 Lines 13-14}, the discovery was summarized, not properly addressed. Also in {M1 pg 10 Lines 3-4} I clearly stated that the little information I did have I had to read backwards! Based on this Judge Zacky believes I have all the facts? Absurd.

Ms. Warren did not argue these allegations of poor attorney-client communication. If these

.2

Statements were Fabricated in anyway why didn't Ms. Warren argue these allegations? Any reasonable attorney would have.

I clearly stated in {M1: pg3 Lines 26-27} and {V2: pg 191 Lines 10-13} That I desired to help Ms. Warren with our defense by providing my personal testimony. Ms. Warren claims in {M2: pg 205 Lines 11-13/20-22} that if providing me a discovery would have been useful than she would have done it. It is absurd that Ms. Warren can't assume that a primary suspects testimony might be useful, yet she can assume that I have the ability to retaliate against witnesses while in custody.

The fact of the matter is Ms. Warren desired help, Please concider her altitude in {M2: pg 205 Lines 25-28}. I relayed to Ms Warren that I agreed my testimony would help and that all I required was access to the discovery, also concider {M1: pg6 Lines 5-6} Which is not uncommon as in my 12+ years experience {M1: page 6 Lines 26-27} I have seen many defendents in custody have posession of their case Discovery without issue. For Ms Warren to claim that the one thing that I could do to help is testify {M2:

.3

pg. 205 Lines 27-28} and than completely ref-
-use to take the appropriate steps to co-op-
-erate with her Client {ME} to acquire the
testimony is a perfect example of a break-
-down of the attorney/Client relationship.
The fact that a "professional" can claim
otherwise is rediculous and alarming in
terms of how a Superior Court Judges.

Ultimately who I choose to legally represent me
according to Judge Zacky and Judge Stuart
is my choice {M1: pg 12 Lines 22-24} and {V2: pg 195 Line 16}
My decision was clear I did not want Ms. Warren
to represent me as an attorney. {M1: pg 3 Lines
15-22, pg 4 Lines 13-18, pg 5 Lines 5-6} - {M2: pg 207
Lines 18-21} and {V2: pg 189 Lines 22-25, pg 190 Lines
27-28, pg 191 Lines 9-10, pg 192 Lines 12-14, pg 193 Lines
3-4, pg 195 Line 11}

That we couldn't agree on something as petty as
whether or not my family had brought trial
Clothes to court for me is ridiculous {M1 pg 4 Lines
23-27} and reflected her continues decision to
be uncooperative.

4

Ground 2 Supporting Facts Extended.
There should be no debate, no question as to whether or not the subpoena of a key witness who testified in the preliminary that he could not identify me as the culprit was crusial to my Jury trial. [P1: pg 16 Lines 5-7] and [M2: pg 202 Lines 10-25] must be strongly concidered. The fact that Judge Stuart understood my concern of Ms. Warren's Door Strategy [M2: pg 202 Lines 23-25] was reason enough to grant my request to dismiss council.

Clerk #1 - When asked if he could identify the person who robbed in the courtroom said he could not. [V1: pg 36 Lines 6-13]

Clerk #2 - repeaticly voiced that she could not see the culprits face. And that making a positive I.D would be innapropriate. [V1: pg 55 Lines 23-24, pg 61 Lines 5-7, pg 64-65 Lines 8-28/1-3]

Security Gaurd - Clearly stated he could not identify me as the culprit and that it would not be a good idea to identify someone he was not sure about [P1: pg 16 Lines 5-7]

These are facts, facts in my favor for a not guilty verdict. None of this was emphasized

1

in our closing arguements whatsoever, worst of all this deprivation of key witness state-ments to the Jury by Ms. Warren not only lacked reasoning [M2: pg 202 Lines 23-25] but was blatantly used by the D.A. who embarassingly inferred that Ms. Warren had the same ability to subpoena witnesses yet she did not. Did absolutely nothing in regards to effectively cross-examine witnesses. [V2: pg 303 Lines 15-17]

To not hold these "Judges" and "Public Defender" to an ethical and professional standard is criminal. These so called professionals failed me and my right to a fair and unbias due process. [V2: pg 195 Lines 10-13]

Judge Stuart blatantly violated my rights to proper representation, bullying the aspects and details of a motion for pro peria status [V2: pgs 189-195]. Specifically in saying that I would recieve no continuance in order to review and study the evidence for a real defense. This is the most gross use of the Criminal Justice System I have ever seen [V2: pg 191 Lines 17-20]

2

SUPERIOR COURT CASE #: PA073925-01

## Declaration of Actions Requested

I request the courts remedy the litigation executed in the lower courts by imposing the original offer of 5 years by the Los Angeles County District Attorney and midigate the sentencing factors imposed by the trial Court.

If the Court makes a determination that poor trial Council and/or a violation of due process were factors that influenced the Judicial proceedings and/or the decision of the Jury's verdict this request must be seriously Concidered and honored.

Being that I the defendent would have taken a more Serious Concideration of the 5 year offer made in early disposition had I known the courts would not allow me to excercise my right to dismiss Council or the right to represent myself.

Alexander J. Carlos
#BN5303

X _____

02-20-22

1

COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

THE PEOPLE OF THE STATE OF          )
CALIFORNIA,                         )
                                    )
          PLAINTIFF-RESPONDENT,     )
                                    )
                VS.                 )   CASE NO. PA093425-01
                                    )
01 ALEXANDER J. CARLOS,             )
                                    )
          DEFENDANT-APPELLANT.      )
_____  )

**COPY**

APPEAL FROM THE SUPERIOR COURT OF LOS ANGELES COUNTY

HONORABLE HAYDEN ZACKY, JUDGE PRESIDING

REPORTER'S TRANSCRIPT OF MARSDEN PROCEEDINGS

TUESDAY, FEBRUARY 25, 2020

SEALED PROCEEDINGS - PAGES 3 THROUGH 13

1 COPY

APPEARANCES:

FOR PLAINTIFF-RESPONDENT:    STATE ATTORNEY GENERAL
                             300 SPRING STREET
                             NORTH TOWER, SUITE 1701
                             LOS ANGELES, CALIFORNIA 90012

FOR DEFENDANT-APPELLANT:     IN PROPRIA PERSONA

**CONFIDENTIAL - MAY NOT BE EXAMINED WITHOUT COURT ORDER**

REPORTED BY:                 LYNDA DAVIDSON, CSR #7427
                             OFFICIAL REPORTER

```
 1              (THE DISTRICT ATTORNEY EXITED THE

 2         COURTROOM, AND PROCEEDINGS RESUMED IN

 3         OPEN COURT AS FOLLOWS:)

 4         THE COURT:  MR. CARLOS, AS YOU CAN SEE, I HAVE

 5    CLEARED THE COURTROOM.  ONLY NECESSARY COURT STAFF IS

 6    NECESSARY HERE.  THE PROSECUTOR HAS LEFT THE COURTROOM.

 7    THAT MEANS THAT WHATEVER YOU TELL ME DURING THIS HEARING

 8    WILL REMAIN CONFIDENTIAL.

 9              AT THE END OF THIS HEARING, I WILL ORDER THAT

10    THE COURT REPORTER KEEP HER NOTES AND NOT TRANSCRIBE THEM

11    UNTIL FURTHER ORDER OF THIS COURT OR ANY OTHER COURT.  THAT

12    MEANS THAT YOU CAN SPEAK FREELY DURING THIS HEARING.

13              DO YOU UNDERSTAND THAT?

14         THE DEFENDANT:  I UNDERSTAND.

15         THE COURT:  YOU HAVE INDICATED THAT YOU WANT ME TO

16    CONSIDER REMOVING MS. WARREN AS YOUR ATTORNEY OF RECORD AND

17    TO APPOINT ANOTHER ATTORNEY TO REPRESENT YOU.  IS THAT

18    CORRECT?

19         THE DEFENDANT:  THAT IS CORRECT.

20         THE COURT:  DO YOU FEEL THAT MS. WARREN HAS NOT

21    PROPERLY REPRESENTED YOU IN THIS CASE?

22         THE DEFENDANT:  I DO FEEL THAT.

23         THE COURT:  WHY DON'T YOU SPECIFICALLY TELL ME WHY

24    YOU FEEL THAT WAY.

25         THE DEFENDANT:  IN THE BEGINNING OF OUR MEETINGS, I

26    ASKED HER MULTIPLE TIMES FOR MY SUMMARY IN ORDER SO -- IN

27    ORDER FOR ME TO BE ABLE TO HELP HER THROUGHOUT THE CASE.

28    MAYBE SOME OF THE, I GUESS, POLICE REPORTS AND --
```

Help

1          THE COURT:  WHAT DO YOU MEAN BY "SUMMARY"?

2          THE DEFENDANT:  I MEAN THE DISCOVERY.

3          THE COURT:  DISCOVERY?

4          THE DEFENDANT:  YEAH.  I ASKED FOR THE DISCOVERY

5     MULTIPLE TIMES AND SHE HAS SHOWN NO INTEREST AT ALL TO EVEN

6     TRY TO GET ME THAT.

7                    I HAVE ASKED HER FOR DRUG COURT.  SHE HAS

8     NEVER BROUGHT THAT UP IN COURT.

9          THE COURT:  DRUG COURT?

10         THE DEFENDANT:  YEAH.  DRUG COURT.

11         THE COURT:  ON A CHARGE LIKE THIS, YOU ARE NOT

12    ELIGIBLE FOR DRUG COURT.

13         THE DEFENDANT:  WELL, IT JUST SHOWS A LACK OF

14    INTEREST FOR ANY TYPE OF, YOU KNOW, TRIAL.  WHEN WE TALK

15    ABOUT GOING TO TRIAL, SHE SHOWS LITTLE INTEREST IN

16    ACTUALLY, YOU KNOW, PROPERLY REPRESENTING ME.  AND I DON'T

17    FEEL COMFORTABLE GOING TO TRIAL WITH HER AS MY LAWYER AT

18    ALL.

19         THE COURT:  IS THERE ANYTHING ELSE YOU WOULD LIKE TO

20    STATE?

21                    BECAUSE IN A MOMENT, I AM GOING TO GIVE HER

22    AN OPPORTUNITY TO RESPOND.

23         THE DEFENDANT:  OKAY.  THE OTHER DAY, I SEEN MY TRIAL

24    CLOTHES HERE, AND I LET HER KNOW THAT WAS MY TRIAL CLOTHES.

25    SHE TOLD ME IT WASN'T.  AND I TOLD HER IT WAS.  SHE KEPT

26    TELLING ME IT WASN'T.  AND I TOLD HER I SPOKE TO MY FAMILY

27    TELLING THEM TO BRING ME MY CLOTHES FOR THE TRIAL.

28         THE COURT:  ALL RIGHT.

1    THE DEFENDANT:  SHE DOESN'T SEEM LIKE SHE IS VERY FOR

2  ME.

3    THE COURT:  WHAT DOES THAT HAVE TO DO WITH HER

4  ABILITY TO REPRESENT YOU?

5    THE DEFENDANT:  I DON'T FEEL COMFORTABLE WITH HER

6  REPRESENTING ME DURING A TRIAL.

7    IF YOU COULD BE THERE DURING OUR MEETINGS, I

8  WOULDN'T HAVE TO EXPLAIN THIS.  I MEAN, I JUST DON'T FEEL

9  COMFORTABLE AT ALL.

10    THE COURT:  I UNDERSTAND.

11    LET ME HEAR FROM HER AND THEN I WILL EXPLAIN

12  THE LAW TO YOU.  OKAY?

13    IS THERE ANYTHING ELSE YOU WANT TO SAY?

14    THE DEFENDANT:  WELL, DO I HAVE A RIGHT TO MY

15  DISCOVERY?

16    THE COURT:  NO, YOU ACTUALLY DON'T.

17    YOUR ATTORNEY HAS DISCOVERY.  AND PURSUANT TO

18  THE PENAL CODE, THE PROSECUTION MUST TURN OVER DISCOVERY

19  AND ANY EVIDENCE FAVORABLE TO THE DEFENDANT TO THE

20  ATTORNEY.  HOWEVER, THE ATTORNEY IS UNDER NO OBLIGATION TO

21  GIVE THAT DISCOVERY TO A CLIENT.

22    IN FACT, I HAVE BEEN TOLD THAT IT'S BETTER

23  PRACTICE FOR DEFENSE ATTORNEYS NOT TO GIVE IT TO THE

24  CLIENT.  AND I WILL TELL YOU WHY.  I HAVE SEEN THIS HAPPEN

25  REPEATEDLY WHERE DISCOVERY HAS BEEN GIVEN TO A DEFENDANT

26  AND IT ENDS UP IN THE WRONG HANDS.  IT ENDS UP BEING USED

27  TO -- I'M NOT SAYING YOU ARE GOING TO DO THIS -- BUT IT

28  ENDS UP BEING USED TO CALL OR INTIMIDATE VICTIMS OR

1    WITNESSES IN COURT.

2              SO IT'S MUCH BETTER TO PREVENT THAT FROM

3    HAPPENING.  AND I THINK THAT'S PROBABLY WHY A LOT OF

4    ATTORNEYS DON'T TURN THAT OVER.

5              SO IS THERE ANYTHING ELSE YOU WOULD LIKE TO

6    ADD?

7              I'M JUST LOOKING AT THE LAW FOR A MOMENT, BUT

8    I AM LISTENING TO YOU.  SO GO AHEAD.  IF THERE'S ANYTHING

9    ELSE, I AM HAPPY TO HEAR FROM YOU.

10         THE DEFENDANT:  I GUESS THAT'S ABOUT IT.

11         THE COURT:  OKAY.  MS. WARREN, WOULD YOU LIKE TO

12    RESPOND AT ALL TO WHAT YOUR CLIENT JUST STATED?

13         MS. WARREN:  YES.  THANK YOU.

14              I HAVE BEEN REPRESENTING MR. CARLOS SINCE

15    SEPTEMBER OF LAST YEAR.

16         THE COURT:  OKAY.

17         MS. WARREN:  AND SO WE HAVE HAD NUMEROUS CONTACTS.

18    AND ON EACH OCCASION, I HAVE THOROUGHLY DISCUSSED THE CASE

19    AND HIS OPTIONS WITH HIM.

20              PRIOR TO PRELIM --

21         THE COURT:  GO AHEAD.

22         MS. WARREN:  PRIOR TO PRELIM, THE OFFER WAS FIVE

23    YEARS ON TWO COUNTS.  AND HIS PROBATION REPORT SHOWS THAT

24    HIS LAST -- THE LAST SENTENCE THAT HE RECEIVED -- I MEAN,

25    HE HAS AN EXTENSIVE RECORD.  BUT MOST OF IT IS MISDEMEANORS

26    STARTING AT THE AGE OF 17 IN 2007.  SO IT'S A 12-YEAR

27    RECORD.

28              BUT HIS LAST CONVICTIONS WERE IN 2015, AND HE

1    HE -- ON TWO DIFFERENT CASES, AND HE RECEIVED, IT LOOKS

2    LIKE, A FOUR-YEAR SENTENCE SUSPENDED -- I MEAN CONCURRENT

3    TO EACH OTHER.

4            SO I ADVISED HIM HOW IT GENERALLY WORKS HERE

5    IN THAT THE E.D.P. OR PRE-PRELIM OFFER IS THE LOWEST OFFER.

6    THAT A LOT OF FACTORS GO INTO HOW THE D.A. MAKES THAT

7    OFFER.  NOT ONLY THE FACTS OF THE CURRENT CASE, BUT A

8    PERSON'S RECORD.  AND THAT THE OFFER WAS FIVE YEARS AND IT

9    WOULD NOT BE LESS THAN THAT BECAUSE IT'S NOT GOING TO BE

10    LESS THAN WHAT HE GOT LAST TIME, WHICH WAS FOUR YEARS.

11            HE REJECTED THAT OFFER.  ON THE PRELIM DATE

12    IT WAS SEVEN, AND HIS MAX APPEARS TO BE SOMETHING AROUND

13    TEN.

14            SO ALL ALONG THE WAY, HE HAS WANTED SOMETHING

15    LESS THAN THE ORIGINAL OFFER OF FIVE YEARS.  AND I HAVE HAD

16    TO TELL HIM THAT WHILE I BROUGHT UP THAT SUGGESTION OF

17    SOMETHING LESS THAN FIVE YEARS, THE D.A. HAS INDICATED

18    ABSOLUTELY NOT.  THEY ARE NOT GOING LOWER THAN FIVE.

19            SO WE HAVE DISCUSSED HIS OPTIONS AGAIN TODAY.

20            I TALKED TO HIM ABOUT THE TRIAL.  I EXPLAINED

21    THE PROCEDURE.  WE DISCUSSED HIS RIGHT TO TESTIFY AND HOW

22    HIS RECORD MAY AFFECT THAT.  AND I ASKED HIM AGAIN IF HE

23    WANTED ME TO APPROACH THE D.A. AND SEE IF HE WANTED TO

24    ACCEPT ANY OFFER AND, AGAIN, HE INDICATED HE WANTS A BETTER

25    OFFER.  NOT THE SEVEN.  NOT THE FIVE.

26            AND I EXPRESSED MY CONCERN TO HIM THAT BASED

27    ON THE FACTS AND THE EVIDENCE THAT I AM AWARE OF, I BELIEVE

28    THAT THE JURY COULD VERY EASILY COME BACK WITH A GUILTY

1    PLEA.

2         THE COURT:  VERDICT.

3         MS. WARREN:  PARDON?

4         THE COURT:  VERDICT.

5         MS. WARREN:  I'M SORRY.  A GUILTY VERDICT.

6              AND I SAID THAT TO HIM BECAUSE I AM ACTUALLY

7    CONCERNED.  I HAVE HAD NUMEROUS CONVERSATIONS WITH HIS

8    FAMILY.  THE COURT IS AWARE THAT HIS WIFE WAS IN THE

9    COURTROOM, BUT NOT CURRENTLY.  AND THAT HE IS SLOWLY

10   WALKING INTO SOMETHING MORE.  AND THAT IF HIS DESIRE WAS TO

11   RESOLVE THIS CASE FOR SOMETHING LESS, THEN IT DOESN'T MAKE

12   SENSE TO ME THAT HE IS NOT HEARING WHAT HIS OPTIONS ARE

13   WHEN I EXPLAIN THEM TO HIM AND HE IS SLOWLY PUTTING HIMSELF

14   IN A POSITION WHERE HE COULD POTENTIALLY GET MORE.

15              I WILL DO FOR HIM WHATEVER HE WANTS TO DO.

16   IF HE WANTS TO GO TO TRIAL, I AM READY AND I AM CERTAINLY

17   ABLE, WILLING TO DO EVERYTHING THAT I CAN ON HIS BEHALF AT

18   A TRIAL.  BUT THE REALITY IS, HE HAS BEEN IDENTIFIED IN ALL

19   OF THESE AND HIS VEHICLE THAT'S REGISTERED TO HIM HAS BEEN

20   IDENTIFIED.

21              SO BASED ON MY EXPERIENCE, I AM CONCERNED FOR

22   HIM IN GOING FORWARD WITH TRIAL AND THAT'S WHY I DISCUSSED,

23   YOU KNOW, TODAY IS THE LAST DAY FOR US TO DISCUSS A

24   POSSIBLE RESOLUTION PRIOR TO BEING SENT OUT TO A COURTROOM

25   AND A JURY BEING ORDERED.

26        THE COURT:  LET ME ASK YOU A QUESTION, MS. WARREN.

27        MS. WARREN:  AND DRUG COURT HAS NOT BEEN OFFERED

28   AND --

1    THE COURT:  RIGHT.

2         IN TERMS OF ASKING FOR DISCOVERY, I DON'T

3    KNOW WHAT YOUR PERSONAL POLICY IS IF YOU JUST WANTED TO

4    EXPLAIN.

5    MS. WARREN:  AND HE DID ASK ME, AND I TOLD HIM THAT I

6    WOULD CONSIDER IT.  BUT IT'S MY -- IN VERY RARE

7    CIRCUMSTANCES DO I GIVE DISCOVERY BECAUSE OF EXACTLY WHAT

8    THE COURT INDICATED WHEN YOU ADDRESSED MY CLIENT.

9         AND WHAT I HAVE DONE IS I HAVE READ THE

10   REPORTS ON NUMEROUS OCCASIONS.

11   THE COURT:  YOU MEAN TO HIM.

12   MS. WARREN:  TO HIM.

13        SO IT'S NOT THAT I HAVE JUST SUMMARIZED.

14   THE DEFENDANT:  THAT'S EXACTLY WHAT SHE DID.

15   THE COURT:  HOLD ON.  SHE IS SPEAKING NOW.

16        GO AHEAD, PLEASE, MS. WARREN.

17   MS. WARREN:  I HAVE READ THE REPORTS.

18        AND THIS IS THE BOTTOM LINE.  WITNESSES HAVE

19   IDENTIFIED HIM AND A VEHICLE HAS BEEN LINKED TO HIM.  SO

20   WHAT HE DOES WANT TO STUDY, WHILE IT MAY MAKE HIM FEEL A

21   LITTLE BIT MORE COMFORTABLE, THERE'S REALLY NOTHING THAT HE

22   CAN DO TO ASSIST ME IN HIS CASE BY HAVING THESE REPORTS.

23   THE COURT:  THANK YOU.

24   THE DEFENDANT:  CAN I SAY SOMETHING?

25   THE COURT:  YOU CAN RESPOND, AND THEN WE WILL MOVE

26   FORWARD.

27        GO AHEAD.

28   THE DEFENDANT:  FROM WHAT I GOT IN MY PRELIMINARY, IN

*uncooperative* (handwritten margin note, lines 5-6)

*unacceptable* (handwritten margin note, lines 12-14)

```
 1   ONE OF THE ROBBERIES, THE WITNESS SAID IT WASN'T ME.  HE

 2   SAID IT WASN'T ME.

 3              AND THE OTHER TWO, FROM WHAT I READ, WHICH I

 4   HAD TO READ BACKWARDS, WAS THEIR SUPPOSED WITNESSES HAD A

 5   HARD TIME POINTING ME OUT IN THE SIX-PACK.  THEY DIDN'T

 6   EVEN SHOW IT TO THE PRELIMINARY HEARING.

 7        THE COURT:  WELL, THEY DON'T HAVE TO.

 8        THE DEFENDANT:  OKAY.  AND THE OFFICER WHO DID POINT

 9   ME OUT ALSO SAID THAT IN THE VIDEO SURVEILLANCE THAT HE

10   DIDN'T IDENTIFY ME AS WELL.

11              SHE ASKED HIM IF HE SAW THE LICENSE PLATES OR

12   SOMETHING THAT ACTUALLY IDENTIFIED MY VEHICLE AND HE SAID

13   NO.

14              SO NONE OF THESE CHARGES HAVE BEEN DROPPED.

15   AND I FEEL LIKE SHE HASN'T EVEN -- I AM SURE THERE IS MORE

16   SHE CAN DO TO HAVE MADE IT LOOK WORSE ON THEIR PART.

17        THE COURT:  BASED ON WHAT YOU HAVE JUST SAID, IT'S

18   CLEAR THAT YOU HAVE A FIRM GRASP OF THE FACTS, AT LEAST AS

19   YOU PERCEIVE THEM.

20        THE DEFENDANT:  THAT'S WHAT I HAVE HEARD.

21        THE COURT:  AND THAT'S OBVIOUSLY BASED ON BEING AT

22   THE PRELIMINARY HEARING AND HEARING WITNESSES AND OBVIOUSLY

23   HEARING WHAT MS. WARREN HAS READ TO YOU.  SO YOU KNOW WHAT

24   THE FACTS ARE.  SHE READ THE REPORTS TO YOU, OBVIOUSLY.

25   OKAY?  SO THAT'S PRETTY CLEAR.

26              YOU MIGHT JUST HAVE A DIFFERENCE IN OPINION

27   AS TO THE STRENGTH OF THE EVIDENCE.  AND THAT'S OKAY.  YOU

28   DON'T HAVE TO AGREE ON EVERYTHING.  SHE IS NOT YOUR BEST
```

1    FRIEND.  SHE IS HERE TO REPRESENT YOU AS AN ATTORNEY.

2              IN TERMS OF DRUG COURT, I CAN TELL THAT

3    YOU --

4         THE DEFENDANT:  IT'S FINE.  I JUST THREW IT OUT

5    THERE.  THAT WAS A FOOLISH THING TO SAY, RIGHT?

6              BUT SHE HASN'T FILED REGULAR MOTIONS ON

7    ANYTHING.

8         THE COURT:  HOLD ON.

9              IF AN ATTORNEY FILES MOTIONS THAT HAVE NO

10   LEGAL BASIS, THEY ARE CALLED FRIVOLOUS MOTIONS AND A LAWYER

11   CAN BE SANCTIONED FOR THAT.

12             THE ONLY -- I MEAN, A JUDGE HEARD THE

13   EVIDENCE AT THE PRELIMINARY HEARING.  IT WAS A DIFFERENT

14   JUDGE, OBVIOUSLY.  AND THAT JUDGE DETERMINED THERE WAS

15   PROBABLE CAUSE TO HOLD YOU OVER FOR TRIAL.  THAT'S BASED ON

16   THE PRELIMINARY HEARING EVIDENCE THAT THE JUDGE HEARD.

17             MS. WARREN DID NOT SEE IT LEGALLY APPROPRIATE

18   TO FILE A MOTION CALLED A 995 MOTION BECAUSE OBVIOUSLY

19   THERE WAS ENOUGH EVIDENCE IN THE TRANSCRIPT TO HOLD YOU TO

20   ANSWER.

21             NOW, IN TERMS OF OTHER MOTIONS, I AM NOT

22   GOING TO ASK HER WHY SHE DID OR DIDN'T.  BUT I CAN TELL YOU

23   THAT THERE IS PRECEDENT FROM THE UNITED STATES SUPREME

24   COURT AND THE CALIFORNIA SUPREME COURT THAT INDICATE THE

25   ATTORNEY OF RECORD MAKES THE TACTICAL AND STRATEGIC

26   DECISIONS WHEN DECIDING WHETHER OR NOT TO GO FORWARD.

27             I OFTEN TELL PEOPLE THIS, MR. CARLOS.  AN

28   ATTORNEY, THEY ARE NOT MAGICIANS.  THEY ARE HERE TO DO

1    THEIR BEST TO ASSIST THEIR CLIENT.

2              MS. WARREN HAS DEDICATED HER ENTIRE

3    PROFESSIONAL CAREER TO HELPING PEOPLE AND TO REPRESENT

4    PEOPLE IN CRIMINAL CASES WHO CANNOT AFFORD AN ATTORNEY.

5    SHE DOESN'T DO IT FOR THE MONEY.  I GUARANTEE YOU THAT.

6    SHE DOES IT BECAUSE SHE THINKS THAT THAT'S HER CALLING.

7    SHE THINKS THAT THAT'S WHAT SHE SHOULD BE DOING TO HELP

8    PEOPLE LIKE YOU.  ALL RIGHT?

9              AND IT'S A TOUGH JOB SHE HAS.  YOU KNOW, DOES

10   SHE HAVE TO BE YOUR BEST FRIEND?  NO.  DOES SHE HAVE TO

11   LIKE YOU?  NO.  DO YOU HAVE TO LIKE HER?  NO.  SHE JUST HAS

12   TO COMPETENTLY REPRESENT YOU.

13             AND WHAT I CAN TELL YOU ABOUT MS. WARREN IS

14   THIS.  SHE HAS DONE TRIALS IN MY COURT BEFORE.  SHE IS A

15   VERY, VERY GOOD ATTORNEY.  OKAY?  AND SHE WILL TRY HER BEST

16   TO MAKE SURE THAT YOUR CONSTITUTIONAL RIGHTS ARE PROTECTED

17   SHOULD THIS CASE GO TO TRIAL.

18             IN TERMS OF HER RECOMMENDING TO YOU THAT YOU

19   CONSIDER RESOLVING THE CASE BEFORE TRIAL, THAT'S JUST BASED

20   ON HER ASSESSMENT OF THE EVIDENCE AND THE STRENGTHS AND THE

21   WEAKNESSES.

22        THE DEFENDANT:  I UNDERSTAND.



23        THE COURT:  I AM TELLING YOU, THOUGH, ULTIMATELY,

24   IT'S YOUR DECISION TO MAKE.

25             AS SHE SAID BEFORE, YOU KNOW, AFTER READING

26   ALL OF THE REPORTS AND HEARING EVIDENCE, SHE IS CONCERNED

27   FOR YOU.  YOU KNOW, SHE DOESN'T THINK IT'S WORTH THE RISK,

28   YOU KNOW, OF GOING TO TRIAL, YOU KNOW WHAT I MEAN, GIVEN

1   HER ASSESSMENT OF THE CASE.  BUT ULTIMATELY, THAT'S YOUR

2   DECISION TO MAKE.

3           SO TO THE EXTENT THAT THERE IS ANY CONFLICT

4   BETWEEN MS. WARREN AND MR. CARLOS, YOU KNOW, I DON'T

5   BELIEVE THAT IT'S RISEN TO THE LEVEL THAT SHE IS UNABLE TO

6   REPRESENT YOU AT TRIAL.  I THINK SHE HAS PROPERLY

7   REPRESENTED YOU.  I THINK SHE WILL CONTINUE TO DO SO.  I

8   DON'T THINK THERE HAS BEEN A BREAKDOWN IN THE

9   ATTORNEY-CLIENT RELATIONSHIP TO THE DEGREE THAT WOULD MAKE

10  IT UNLIKELY THAT SHE COULD PROPERLY REPRESENT YOU AT TRIAL.

11          MARSDEN MOTION IS DENIED AT THIS TIME.

12          THE COURT REPORTER IS ORDERED TO KEEP HER

13  NOTES CONFIDENTIAL, NOT TRANSCRIBE THIS HEARING UNTIL

14  FURTHER ORDER OF THIS COURT OR ANY OTHER COURT.

15          LET'S PLEASE BRING IN THE D.A.

16          (END OF MARSDEN PROCEEDINGS.)

17

18

19

20

21

22

23

24

25

26

27

28

*Communication* (handwritten margin note pointing to lines 7 and 9)

Nielsen?

COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT


THE PEOPLE OF THE STATE OF CALIFORNIA,    )
                                          )
          PLAINTIFF-RESPONDENT,           )
                                          )
                                          )
          VS.                             )    SUPERIOR COURT
                                          )    NO. PA093425-01
                                          )
01 ALEXANDER CARLOS,                      )
                                          )
          DEFENDANT-APPELLANT.            )
_____   )


APPEAL FROM THE SUPERIOR COURT OF LOS ANGELES COUNTY

HONORABLE DAVID W. STUART, JUDGE PRESIDING

REPORTER'S PARTIAL TRANSCRIPT ON APPEAL

MARCH 2, 2020

**SEALED PROCEEDINGS – MARSDEN HEARING**

**<u>CONFIDENTIAL–MAY NOT BE EXAMINED WITHOUT COURT ORDER</u>**


APPEARANCES:

FOR PLAINTIFF-RESPONDENT:    XAVIER BECERRA
                             STATE ATTORNEY GENERAL
                             300 SOUTH SPRING STREET
                             NORTH TOWER, SUITE 1701
                             LOS ANGELES, CALIFORNIA   90013


FOR DEFENDANT-APPELLANT:     IN PROPRIA PERSONA


VOLUME 2 OF 2
PGS 202 THROUGH 208

                             KELLEY WARREN, CSR #7929
                             OFFICIAL REPORTER



1    THE COURT:  WE-ARE IN CLOSED SESSION.  THE ONLY

2    PEOPLE PRESENT ARE THE DEFENDANT, MS. WARREN AND COURT

3    STAFF.  SO WE DO THAT SO YOU CAN SPEAK FREELY TO ME.

4    NOTHING THAT YOU SAY RIGHT NOW IS GOING TO GET BACK TO THE

5    PROSECUTOR, AND IT WON'T BE USED AGAINST YOU DURING THE

6    TRIAL.  DO YOU UNDERSTAND?

7    THE DEFENDANT:  I UNDERSTAND.

8    THE COURT:  OKAY.  GO AHEAD.

9    THE DEFENDANT:  OKAY.  I ASKED MS. WARREN WHY WAS --

10   SHE WAS QUESTIONING THE SECURITY GUARD -- WHY SHE DIDN'T

11   ASK HIM TO MAKE AN ID LIKE THEY DID IN PRELIMINARY, WHERE

12   HE SAID IT WASN'T ME.  SHE DIDN'T ASK HIM.  NEITHER DID THE

13   D.A. I KNOW WHY THE D.A. DIDN'T ASK HIM, SO HE WOULDN'T SAY

14   IT WASN'T ME IN FRONT OF THE JURY.  THAT HE DID IN

15   PRELIMINARY.  I COULDN'T UNDERSTAND.  I CAN UNDERSTAND WHY

16   THE DISTRICT ATTORNEY DID THAT, BUT I -- I DON'T UNDERSTAND

17   WHY MY ATTORNEY DIDN'T ASK.  I THINK IT'S CRUCIAL TO MY

18   JURY HERE.  I THOUGHT SHE WOULD SUBPOENA HIM HERE FOR

19   CLOSING ARGUMENTS.  IF SHE IS JUST GOING TO DO CLOSING

20   ARGUMENTS AND SHE'S NOT GOING TO QUESTION AGAINST ME, NOT

21   GOING TO COME BACK IN ORDER TO MAKE THAT WRONG ID IN FRONT

22   OF THE JURY, WHICH I THINK IS CRUCIAL TO MY CASE.

23   THE COURT:  ALL RIGHT.  SO THAT'S A FAIR QUESTION.

24   AND I WAS KIND OF WONDERING IT MYSELF DURING THE TRIAL, WHY

25   NOBODY ASKED HIM.  I WILL SAY THAT MS. WARREN, AS A TRIAL

26   ATTORNEY, IS IN CHARGE OF STRATEGY, AND SHE IS IN CHARGE OF

27   THE TRIAL.  THERE IS REALLY ONLY A COUPLE DECISIONS YOU CAN

28   MAKE ON YOUR OWN DURING THE TRIAL, BUT WELL GET TO THAT

1    LATER.  IT'S A FAIR QUESTION.  SO, MS. WARREN, DID YOU WANT

2    TO ADDRESS THAT?

3        MS. WARREN:  WHAT I TOLD HIM, THERE HAS BEEN NO ID.

4    THE D.A. CAN'T CLAIM IN ANY CLOSING ARGUMENT THAT THERE WAS

5    AN ID, AND THERE'S NEVER BEEN AN ID AND --

6        THE COURT:  THAT'S SOMETHING THAT YOU ARE PLANNING

7    TO ARGUE?

8        MS. WARREN:  THAT'S SOMETHING I'M GOING TO ARGUE IN

9    MY CLOSING.  IT'S BASICALLY JUST A DIFFERENT WAY OF ARGUING

10   THE SAME POINT.  AND THAT THE D.A. CAN'T ARGUE THAT THERE

11   WAS AN ID.  AND I WILL CERTAINLY POINT OUT THAT THERE

12   WASN'T AN ID.

13       THE COURT:  THERE IS ALWAYS A RISK IF YOU ASK A

14   QUESTION YOU DON'T KNOW THE ANSWER TO.  THEY MIGHT STAND UP

15   AND POINT TO YOU AND SAY, WELL, YEAH, NOW THAT I SEE HIM IN

16   PERSON... WHO KNOWS.  BUT THAT'S THE STRATEGY.

17           ANYTHING ELSE OTHER THAN THAT?

18       THE DEFENDANT:  WELL, IF THAT WERE TO HAPPEN, I'M

19   SURE MS. WARREN WOULD BRING UP HIS STATEMENT FROM

20   PRELIMINARY, RIGHT?

21       THE COURT:  I'M SURE.

22       THE DEFENDANT:  SO I'M JUST SAYING I THINK IT'S BAD

23   STRATEGY.  I'M THINKING SHE MIGHT BE DOING IT TO FAVOR THE

24   D.A.'S CASE.  AND I AM ALLEGING THAT.

25       THE COURT:  WHY WOULD SHE DO THAT?

26       THE DEFENDANT:  BECAUSE IT'S JUST SO OBVIOUS.

27       THE COURT:  WHAT DO YOU MEAN?

28       THE DEFENDANT:  THIS IS A SHORT TRIAL.  THIS ISN'T A

1   LONG TRIAL, SO I GUESS SHE'S BEEN ASKING ME WHAT DEFENSE WE

2   DO HAVE.  THAT'S KIND OF ONE OF OUR DEFENSES THAT SHE

3   FAILED TO USE THAT DURING TRIAL IN FRONT OF THE JURY.  AND

4   I WOULD LIKE A PUBLIC DEFENDER THAT WOULD SEE THAT AND TRY

5   TO USE THAT, BECAUSE I NOTIFIED MS. WARREN ABOUT MY

6   RECOLLECTION OF THAT DAY, AND WHAT I TOLD HER WAS THE ONLY

7   THING I CAN REMEMBER THAT DAY IS DRINKING AND GOING TO

8   SLEEP IN MY HOUSE.  THAT'S IT.  THAT'S MY DEFENSE.  SO

9   ANYTHING ELSE WE CAN USE BASED ON THEIR TESTIMONY IS WHAT

10  WE NEED TO USE.  AND I FEEL LIKE MAYBE ANOTHER PUBLIC

11  DEFENDER -- I DON'T HAVE TO DO IT MYSELF IF THAT'S WHERE

12  YOU ARE CONCERNED -- I COULD EASILY SEE THAT AND DISCUSS

13  THAT WITH ME.  I THOUGHT -- IF I WOULD HAVE KNOWN

14  MS. WARREN WAS GOING TO NOT ASK HIM THAT QUESTION, I WOULD

15  HAVE ASKED HER MYSELF TO ASK HIM THAT QUESTION.

16          THE COURT:  SO WE ARE STILL TALKING ABOUT THE SAME

17  ISSUE.  SO MS. WARREN IS IN CHARGE OF STRATEGY.

18              DO YOU HAVE ANY OTHER ISSUES YOU WANT TO BRING

19  UP?

20          THE DEFENDANT:  I MEAN, I WOULD LIKE MY DISCOVERY

21  EVEN THOUGH WE ARE THIS DEEP IN THE TRIAL, JUST SO I CAN

22  HAVE IT FOR MY RECORDS.  I'M ENTITLED TO THAT, AT LEAST.

23          THE COURT:  ALL RIGHT.  I UNDERSTAND.

24              MS. WARREN, DO YOU WANT TO ADDRESS THAT?

25          MS. WARREN:  THERE'S CONCERNS WHEN ANY DEFENDANT

26  WHO'S IN CUSTODY HAS COPIES OF DISCOVERY AND WHAT COULD

27  POTENTIALLY HAPPEN IF THAT -- THOSE DOCUMENTS GET TAKEN

28  FROM THAT PERSON, GET IN THE HANDS OF SOMEONE ELSE.  SO

1    SHORT --

2          THE COURT:  HAVE YOU READ THE DISCOVERY TO HIM?

3          MS. WARREN:  I HAVE READ THE DISCOVERY TO HIM.  I'VE

4    READ -- HE WAS PRESENT AT THE PRELIMINARY HEARING.  HE IS

5    WELL AWARE OF THE ONE -- THE ACTUAL WIT SAID AT THE

6    PRELIMINARY HEARING, WE HAVE DISCUSSED THIS CASE NUMEROUS

7    TIMES.  I HAVE HAD HIM SINCE SEPTEMBER OF LAST YEAR.  SO HE

8    IS FULLY AWARE OF -- OF WHAT THE DISCOVERY OR THE REPORTS

9    HAVE AS FAR AS WHAT THEY SAY THE OFFICERS SAW, DID, WHAT

10   THE WITNESSES SAW, DID.  HE IS WELL AWARE.  IT'S ALL BEEN

11   READ TO HIM.  SO UNLESS SOMEONE CAN REALLY HELP ME WITH

12   WHAT -- WITH THE PREPARATION OF THE CASE BY HAVING A COPY

13   OF THE DISCOVERY, I GENERALLY DON'T DO IT.  IN THIS CASE

14   HE'S TOLD ME, AND -- HIS STATEMENT HAS NEVER CHANGED -- HE

15   BELIEVES HE WAS HOME SLEEPING AT THE TIME OF THIS.  HE HAS

16   NO EXPLANATION AS TO HOW SOMEONE WHO SEEMS TO LOOK LIKE HIM

17   MIGHT HAVE BEEN DOING THESE THINGS.

18          THE COURT:  WE ARE JUST TALKING ABOUT THE DISCOVERY

19   RIGHT NOW.

20          MS. WARREN:  YEAH, BUT I'M JUST SAYING, IF I THOUGHT

21   HIM HAVING THE DISCOVERY MIGHT BE HELPFUL IN PREPARING A

22   DEFENSE, THEN I WOULD HAVE GIVEN IT TO HIM.  BUT HIS ANSWER

23   HAS ALWAYS BEEN IT WASN'T ME, IT WASN'T MY CAR, AND I DON'T

24   KNOW HOW -- ABOUT ANYTHING.  THAT WAS IT, WHICH IS WHY I

25   DON'T HAVE AN AGENDA.  I'M HERE TO DO FOR HIM THE BEST THAT

26   I CAN AS FAR AS DEFENDING HIM AND REPRESENTING HIM AT

27   TRIAL.  BUT ONE THING THAT HE CAN DO, IF HE WANTS TO, IS

28   TAKE THE STAND.  AND I'VE HAD IT WHERE CLIENTS CHANGE THEIR

1  MINDS.  IT'S A BIG DECISION AND THERE ARE CONSEQUENCES,

2  POSITIVE AND POTENTIALLY NEGATIVE TO IT, AND I LIKE TO HAVE

3  NUMEROUS DISCUSSIONS WITH MY CLIENTS.  AND, OFTENTIMES, MY

4  CLIENTS CHANGE THEIR MIND AS THE TRIAL GOES ALONG.  SO THE

5  ONE THING I DO IS I GET -- IT'S NOT THAT I'M TRYING TO

6  PERSUADE HIM ONE WAY OR ANOTHER.  I JUST WANT TO KNOW WHAT

7  DOES HE WANT TO DO.  SO WE AGAIN TALKED ABOUT IT THIS

8  MORNING, AND IT SEEMED TO UPSET HIM, LIKE, I ALREADY TOLD

9  YOU, THAT I DON'T WANT -- ON FRIDAY -- I DON'T WANT TO

10 TESTIFY.  WELL, IT'S THE WEEKEND, THINGS CAN CHANGE, I JUST

11 WANTED TO MAKE SURE.

12             SO I THINK I'VE ANSWERED THE DISCOVERY

13 ISSUE.

14             THE COURT:  YES, YOU HAVE.

15             MS. WARREN:  AND AS FAR AS -- I HAVE BEEN DOING THIS

16 FOR A LONG TIME, AND I HAVE HAD IT WHERE WITNESSES HAVE

17 SAID THEY CANNOT IDENTIFY THE PERSON, AND THEY DON'T FEEL

18 COMFORTABLE IDENTIFYING SOMEBODY BECAUSE THEY DON'T FEEL

19 CERTAIN ENOUGH.  AND YET, OVER TIME, AFTER THEY'VE SEEN

20 THAT PERSON, THEY COME IN AND THEY SAY, YOU KNOW WHAT, I

21 HAVE HAD SOME MORE TIME TO PROCESS THIS.  EVEN THOUGH IT

22 KIND OF FLIES CONTRARY TO SCIENCE, BUT THEY BELIEVE THAT

23 THEY NOW RECALL, AND THAT THIS NOW IS THE PERSON.  AND THEY

24 ARE PREPARED TO SAY THAT THIS IS THE PERSON.  I DIDN'T WANT

25 TO TAKE ANY CHANCE OF THAT HAPPENING BY GIVING OSCAR THE

26 OPPORTUNITY TO EVEN SAY HE -- YOU KNOW WHAT, I'M NOT SURE,

27 BUT I KINDA THINK HE DOES LOOK LIKE THE PERSON, WE

28 STRUGGLED, THE MASK CAME OFF, OR THE T-SHIRT CAME OFF.

1    IT'S BETTER TO ARGUE THAT THERE HAS BEEN NO ID WHERE,

2    CLEARLY, THE OTHER COUNTS THE D.A. WENT THROUGH GREAT PAINS

3    TO HAVE ID MY CLIENT IN COURT.  SO THAT WAS MY STRATEGY.

4         THE COURT:  ALL RIGHT.  SO ANY OTHER ISSUES,

5    MR. CARLOS?

6         THE DEFENDANT:  WELL, YEAH.  I MEAN, SHE SAID THAT'S

7    HER STRATEGY.  BUT I'M SURE THE D.A., IF THAT WAS THE CASE,

8    THE D.A. SPEAKS WITH OSCAR BEFORE HE CAME, BEFORE HE COMES

9    INTO THE COURTHOUSE.  I'M SURE IF HE HAD A POSSIBILITY OF

10   CHANGING HIS MIND, THE D.A. WOULD USE THAT.  BUT EITHER

11   WAY, WHAT ARE THE GROUNDS FOR EVER DISMISSING A PUBLIC

12   DEFENDER?  MAY I ASK?

13        THE COURT:  IF THERE HAS BEEN A COMPLETE BREAKDOWN

14   OF THE ATTORNEY/CLIENT RELATIONSHIP, SUCH AS THE ATTORNEY

15   CANNOT PROPERLY REPRESENT YOU.  AND I'M NOT SEEING THAT.

16        THE DEFENDANT:  HOW ARE YOU NOT SEEING THAT?

17        THE COURT:  DO YOU HAVE ANY OTHER ISSUES?

18        THE DEFENDANT:  YEAH.  I BELIEVE THE RELATIONSHIP

19   HAS BROKEN DOWN BEYOND PROPER REPRESENTATION.  I BELIEVE I

20   PROVED THAT.  SHE SHOWS ALMOST A LACK OF INTEREST IN MY

21   CASE.

22        THE COURT:  OKAY.  I'M NOT SEEING THAT.  MS. WARREN

23   IS VERY EXPERIENCED.  SHE HAS BEEN DOING THIS FOR MANY,

24   MANY YEARS.  AND I HAVE SEEN HER CONDUCT TRIALS BEFORE AND

25   SHE IS IN CHARGE OF STRATEGY DURING THE TRIAL.  SO I DO NOT

26   SEE A BREAKDOWN OF THE ATTORNEY/CLIENT RELATIONSHIP SUCH

27   THAT MS. WARREN CANNOT DO HER JOB PROPERLY FOR YOU,

28   MR. CARLOS.  I'M GOING TO DENY YOUR REQUEST TO DISMISS HER.

1   THAT'S MY RULING.  AND THIS PORTION OF THE TRANSCRIPT WILL

2   BE SEALED UNTIL FURTHER ORDER OF THE COURT.

3              LET'S BRING IN MS. NIZAMI AND WE WILL CONTINUE

4   THE TRIAL.  HANG -- YEAH.  BRING IN MS. NIZAMI FIRST.

5              (THE DEPUTY DISTRICT ATTORNEY RETURNED TO

6              THE COURTROOM; PROCEEDINGS IN OPEN COURT

7              WERE RESUMED.)

Pages 31, 55, 60, 61, 64, 65 REMOVED

COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

THE PEOPLE OF THE STATE OF CALIFORNIA,

        PLAINTIFF-RESPONDENT,

        VS.

01 ALEXANDER CARLOS,

        DEFENDANT-APPELLANT.

)
)
)
)
)
)
)
)
)
)
)

MAY 1 9 2020

SUPERIOR COURT
NO. PA093425-01

APPEAL FROM THE SUPERIOR COURT OF LOS ANGELES COUNTY

HONORABLE DAVID W. STUART, JUDGE PRESIDING

REPORTER'S TRANSCRIPT ON APPEAL

FEBRUARY 25, 26, 27, 2020

APPEARANCES:

FOR PLAINTIFF-RESPONDENT:     XAVIER BECERRA
                             STATE ATTORNEY GENERAL
                             300 SOUTH SPRING STREET
                             NORTH TOWER, SUITE 1701
                             LOS ANGELES, CALIFORNIA   90013

FOR DEFENDANT-APPELLANT:     IN PROPRIA PERSONA

VOLUME 1 OF 2
PGS 1 THROUGH 151



KELLEY WARREN, CSR #7929
OFFICIAL REPORTER

1          Q.    AND HOW DO YOU KNOW THAT YOU MARKED THIS?

2          A.    LIKE I MARKED IT WITH MY HAND, THE PEN, LIKE

3    ON THAT DAY WHEN THE DETECTIVE WHEAT CAME.

4          Q.    DO YOU SEE YOUR SIGNATURE ON THERE?

5          A.    YEAH, THAT'S MY SIGNATURE.

6          Q.    THE PERSON THAT ROBBED YOU THAT NIGHT THAT YOU

7    MARKED IN THIS -- IN THESE PHOTOGRAPHS, DO YOU SEE THAT

8    PERSON IN COURT TODAY?

9                COULD YOU TAKE A LOOK AROUND AND TELL US IF

10   YOU SEE THIS PERSON IN COURT TODAY.

11               YOU CAN STAND...IF THE COURT WOULD ALLOW.

12         THE COURT:  YES.

13         A.    NO.

14         Q.    IT'S BEEN SOME TIME.  IF YOU DON'T, THEN YOU

15   DON'T.

16         THE COURT:  NO?  OKAY.

17         MS. NIZAMI:  PERMISSION TO PUBLISH?

18         THE COURT:  YES.  WE HAVE THAT AGREEMENT.

19         Q.    BY MS. NIZAMI:  MR. SINGH, YOU WERE POINTING

20   AT POSITION 6.

21         A.    YES.

22         Q.    WHEN DID YOU DO THIS?  WHEN DID YOU LOOK AT

23   THESE PHOTOGRAPHS?

24         A.    LIKE RIGHT AWAY, I THINK AFTER TWO OR THREE

25   DAYS.

26         Q.    IN SEPTEMBER OF 2019?

27         A.    YEAH.

28         Q.    AND YOU'RE CONFIDENT THIS WAS THE PERSON?

1    REGISTER, I SAW THAT IT WAS A KITCHEN KNIFE.  BEFORE THAT,

2    I THOUGHT IT WAS A GUN BECAUSE IT LOOKED BLACK TO ME, SO IT

3    SEEMED TO ME IT WAS LIKE A HANDLE OF A GUN.

4         Q.    WHEN YOU SAW THAT KNIFE AND HEARD WHAT HE WAS

5    SAYING TO YOU, WERE YOU AFRAID?

6         A.    YEAH, I WAS AFRAID BECAUSE, AFTER THAT, HE

7    STARTED TELLING ME, GIVE ME THE HUNDREDS, WHERE'S THE

8    HUNDREDS.  BUT I DIDN'T HAVE NO HUNDREDS IN THE -- IN MY

9    TWO REGISTERS.  BUT I KNEW I HAD HUNDREDS IN THE GASOLINE

10   REGISTER.  SO, LIKE, I WAS AFRAID, LIKE HE MIGHT HAVE

11   JUMPED OVER THE COUNTER AND DID SOMETHING TO ME.

12        MS. WARREN:  OBJECTION, YOUR HONOR.  NO QUESTION

13   PENDING.  IT'S BECOME A NARRATIVE.

14        THE COURT:  WE'LL END THE ANSWER RIGHT THERE.  NEXT

15   QUESTION.

16        Q.    BY MS. NIZAMI:  AT THAT POINT HOW DID YOU

17   FEEL?

18        A.    I FEEL STILL IN SHOCK.  I DIDN'T KNOW WHAT TO

19   DO.  AND AFTER I GAVE HIM THE MONEY, I STARTED CLICKING THE

20   EMERGENCY BUTTON, AND I PROCEED TO CALLING MY MANAGER JUST

21   SO I COULD KEEP TRACK OF AROUND WHAT TIME THE INCIDENT HAD

22   HAPPENED.

23        Q.    WHEN THIS PERSON WALKED IN DID YOU KNOW HIM?

24        A.    NO, I COULDN'T SEE HIS FACE VERY MUCH.

25        Q.    DID THIS PERSON ACTUALLY LEAVE WITH MONEY?

26        A.    YES.

27        Q.    DO YOU REMEMBER HOW MUCH MONEY IT WAS?

28        A.    NOT SURE EXACTLY BECAUSE I DIDN'T DROP MY

```
 1          Q.    IS THIS FROM AROUND THE SAME TIME?
 2          A.    YES.
 3          Q.    NOW, MS. RUIZ, DID YOU MEET WITH A DETECTIVE
 4   IN THIS CASE?
 5          A.    YES, THE NEXT DAY AT MY HOUSE.
 6          Q.    AND DID THAT DETECTIVE SHOW YOU SOME
 7   PHOTOGRAPHS?
 8          A.    YES.
 9          MS. NIZAMI:  YOUR HONOR, I HAVE IN MY HAND WHAT
10   APPEARS TO BE A SIX-PACK.  MAY IT BE MARKED AS PEOPLE'S
11   8.
12          THE COURT:  ALL RIGHT.  PEOPLE'S 8.
13                  (MARKED FOR IDENTIFICATION:
14                  PEOPLE'S EXHIBIT 8.)
15          Q.    BY MS. NIZAMI:  MS. RUIZ, I'M JUST GOING TO
16   APPROACH AND SHOW THIS TO YOU.
17                  DO YOU RECOGNIZE PEOPLE'S 8?
18          A.    YES.  I RECOGNIZE IT BECAUSE IT HAS MY
19   INITIALS.
20          Q.    OKAY.  THANK YOU.
21                  MS. RUIZ, IS THIS THE SET OF PHOTOS THAT A
22   DETECTIVE SHOWED YOU AT YOUR HOUSE?
23          A.    YES.
24          Q.    AND YOU CIRCLED NUMBER 6; IS THAT RIGHT?
25          A.    YES, I CIRCLED NUMBER 6.
26          Q.    WHY DID YOU CIRCLE NUMBER 6?
27          A.    WHEN THE DETECTIVES, THEY WERE TALKING TO ME,
28   AND AS THEY WERE SHOWING ME THE PICTURE, I HONESTLY DIDN'T
```

SEE THE PERSON THAT ATTACKED ME OR ROBBED ME. BUT WHEN I SAW THIS PICTURE, IT GAVE ME A FEELING THAT NUMBER 6 IT WAS.

Q. WHAT KIND OF FEELING DID IT GIVE YOU?

A. LIKE A GUT FEELING. BUT I'M NOT A HUNDRED PERCENT SURE IF IT'S HIM BECAUSE I DIDN'T REALLY GET TO SEE HIS FULL FACE FOR ME TO POINT FINGERS THAT IT WAS.

no identification

Q. OKAY. AND WHEN YOU MET WITH THE DETECTIVE, WAS THIS INCIDENT FRESH IN YOUR MIND?

A. YES.

MS. NIZAMI: THANK YOU. I HAVE NOTHING FURTHER.

THE COURT: ALL RIGHT. CROSS-EXAMINATION.

**CROSS-EXAMINATION**

BY MS. WARREN:

Q. GOOD AFTERNOON.

A. HELLO.

Q. SO THAT NIGHT WERE YOU WORKING ALONE?

A. YES, I WAS.

Q. AND AT THAT TIME HOW LONG HAD YOU BEEN WORKING AT THAT 7-ELEVEN?

A. I STARTED WORKING AGAIN -- BECAUSE I USED TO WORK THERE PREVIOUSLY -- I'D SAY LIKE ABOUT A MONTH OR TWO.

Q. AND DO YOU USUALLY WORK ALONE?

A. YES. AFTER THE INCIDENT, THAT'S WHEN I STARTED WORKING WITH ANOTHER EMPLOYEE.

Q. AND WERE YOU TOLD ABOUT SOME SORT OF PROCEDURE

1   THE PRIOR WITNESS AND I THOUGHT THAT THEY WERE -- THEY

2   WOULD BE IN LINE WITH THE PRIOR ALLOWED QUESTIONING OF THE

3   PRIOR WITNESS.  SO I SEE NOTHING INAPPROPRIATE, BUT I CAN

4   MOVE ON.

5          THE COURT:  OKAY.  LET'S MOVE ON.

6          Q.    BY MS. WARREN:  NOW, YOU SAID THAT YOU

7   COULDN'T SEE THIS MAN'S FACE, CORRECT?

8          A.    I COULDN'T.  ALL I SAW WAS LIKE HIS CHIN, LIKE

9   FOR ABOUT LIKE FIVE SECONDS, BECAUSE I WAS TRYING TO LOOK

10  AT HIM, AND THAT'S WHEN HE STARTED LIKE KIND OF YELLING,

11  RUSHING ME TO GIVE HIM THE MONEY.  SO I JUST CONCENTRATED

12  ON GIVING HIM EVERYTHING HE WANTED SO HE COULD GET OUT.

13         Q.    OKAY.  WHEN YOU THINK ABOUT WHAT YOU DID SEE,

14  DID THIS MAN APPEAR TO HAVE SOME FACIAL HAIR LIKE ON HIS

15  CHIN?

16         A.    YES.

17         Q.    SO WHEN YOU WERE SHOWN THIS GROUP OF

18  PHOTOGRAPHS BY THE DETECTIVE THE NEXT DAY, YOU PICKED ONE

19  OF THEM, RIGHT?

20         A.    YES.

21         Q.    BASED ON A FEELING?

22         A.    YES.

23         Q.    OKAY.  BUT YOU DON'T KNOW IF THAT FEELING IS

24  BECAUSE YOU RECOGNIZE HIM OR FOR SOME OTHER REASON,

25  RIGHT?

26         A.    YES.  HE JUST -- THE FEELING MADE ME FEEL LIKE

27  IT WAS HIM, BUT I CAN'T BE CERTAIN THAT IT WAS HIM BECAUSE

28  I DID NOT GET A GOOD LOOK AT HIS WHOLE FACE FOR ME TO POINT

```
 1   A FINGER THAT IT WAS HIM OR NOT.
 2          Q.    SO YOU COULD BE WRONG?
 3          A.    I COULD BE WRONG, YES.
 4          Q.    DID YOU HAVE ANY CONVERSATIONS WITH ANYBODY
 5   OUTSIDE THE STORE AFTER THE MAN LEFT, ASKING THEM IF THEY
 6   SAW ANYTHING, THESE HOMELESS PEOPLE THAT YOU SAID ARE -- OR
 7   PEOPLE THAT ARE HANGING OUT AROUND OUTSIDE?
 8          A.    NO.  I JUST REMEMBER WHILE I WAS WAITING FOR
 9   THE COPS, THIS CUSTOMER THAT USUALLY COMES, SHE WAS ANGRY
10   BECAUSE I WOULDN'T OPEN THE DOOR.  AND I SAID, LIKE, HEY,
11   DUDE, I CAN'T OPEN THE DOOR, I JUST GOT ROBBED AND JUST
12   LEAVE.  SO SHE WAS JUST ASKING ME IF I WAS OKAY, IF I
13   NEEDED ANYTHING.  AND SHE JUST LEFT AND I WAITED FOR THE
14   COPS.
15          Q.    OKAY.  BUT I MEAN THE PEOPLE THAT YOU KNEW
16   WERE ALREADY OUTSIDE.
17          A.    NO.
18          Q.    YOU DIDN'T TALK TO THEM ABOUT --
19          A.    NO, I DIDN'T TALK.  I DIDN'T WANT TO LET
20   ANYBODY KNOW WHAT HAD HAPPENED.
21          Q.    AND DID YOU LOOK OUTSIDE THROUGH EITHER A
22   WINDOW OR A DOOR AND WATCH THIS PERSON AS HE WALKED AWAY?
23          A.    NO, I DID NOT.
24          Q.    DID YOU SEE HIM GET INTO A VEHICLE?
25          A.    NO.
26   MS. WARREN:  THANK YOU.  I HAVE NOTHING FURTHER.
27   THE COURT:  ALL RIGHT.  ANYTHING FURTHER?
28   MS. NIZAMI:  JUST ONE QUESTION.
```

COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

THE PEOPLE OF THE STATE OF CALIFORNIA,           )
                PLAINTIFF-RESPONDENT,             )
                                                 )      MAY 1 9 2020.
                                                 )
        VS.                                       )      SUPERIOR COURT
                                                 )      NO. PA093425-01
                                                 )
01 ALEXANDER CARLOS,                              )
                DEFENDANT-APPELLANT.              )
                                                 )

APPEAL FROM THE SUPERIOR COURT OF LOS ANGELES COUNTY

HONORABLE DAVID W. STUART, JUDGE PRESIDING

REPORTER'S TRANSCRIPT ON APPEAL

FEBRUARY 28, MARCH 2, 3, 2020

APPEARANCES:

FOR PLAINTIFF-RESPONDENT:       XAVIER BECERRA
                                STATE ATTORNEY GENERAL
                                300 SOUTH SPRING STREET
                                NORTH TOWER, SUITE 1701
                                LOS ANGELES, CALIFORNIA  90013

FOR DEFENDANT-APPELLANT:        IN PROPRIA PERSONA

VOLUME 2 OF 2
PGS 152 THROUGH 324

                                KELLEY WARREN, CSR #7929
                                OFFICIAL REPORTER


©COPY

```
 1   CASE NUMBER:          PA093425-01
 2   CASE NAME:            PEOPLE V. ALEXANDER CARLOS
 3   SAN FERNANDO, CA      MONDAY, MARCH 2, 2020
 4   DEPARTMENT NVI        HON. DAVID W. STUART, JUDGE
 5   REPORTER:             KELLEY WARREN, CSR #7929
 6   TIME:                 A.M. SESSION
 7   APPEARANCES:          (AS HERETOFORE NOTED.)
 8
 9                         -0O0-
10
11          (THE FOLLOWING PROCEEDINGS WERE HELD
12          OUTSIDE THE PRESENCE OF THE JURY:)
13       THE COURT:  LET'S GO BACK ON THE RECORD ON ALEXANDER
14   CARLOS.  THE DEFENDANT IS PRESENT AND REPRESENTED, THE
15   PEOPLE ARE REPRESENTED, WE ARE OUTSIDE THE PRESENCE OF THE
16   JURY.
17             MS. WARREN.
18       MS. WARREN:  GOOD MORNING, YOUR HONOR.  I HAD A
19   CHANCE TO SPEAK TO MY CLIENT PRIOR TO RESUMING TRIAL.  I
20   ASKED IF HE HAD ANY QUESTIONS, AND TODAY WOULD BE A GOOD
21   DAY, AND IF HE WANTED TO TESTIFY, HE WOULD BE TAKING THE
22   STAND.  AND HE INDICATED TO ME THAT HE WANTS TO REPRESENT
23   HIMSELF.  HE WANTS TO GO PRO PER.
24       THE COURT:  OKAY.  YOU STILL FEEL THAT WAY?
25       THE DEFENDANT:  YES, I DO.
26       THE COURT:  HAVE YOU EVER REPRESENTED YOURSELF
27   BEFORE?
28       THE DEFENDANT:  NO, I HAVE NOT.
```

Decision

1    THE COURT:  DO YOU HAVE ANY LEGAL TRAINING?

2    THE DEFENDANT:  NO.

3    THE COURT:  DO YOU HAVE ANY LEGAL TRAINING?

4    THE DEFENDANT:  NO.

5    THE COURT:  HAVE YOU GONE TO JURY TRIAL --

6    THE DEFENDANT:  YES, I HAVE.

7    THE COURT:  -- AT ALL BEFORE?

8    THE DEFENDANT:  YES, I HAVE.

9    THE COURT:  SO YOU'VE SEEN A JURY TRIAL BEFORE.

10    THE DEFENDANT:  YES, I HAVE.

11    THE COURT:  ALL RIGHT.  YOU UNDERSTAND YOU HAVE THE

12   RIGHT TO AN ATTORNEY?

13    THE DEFENDANT:  I UNDERSTAND THAT.

14    THE COURT:  YOU ALSO UNDERSTAND THAT IT'S -- IT'S

15   NEVER A GOOD IDEA TO REPRESENT YOURSELF IF YOU HAVE THE

16   OPTION OF HAVING A TRAINED PROFESSIONAL ATTORNEY WITH YEARS

17   OF EXPERIENCE?  DO YOU UNDERSTAND?

18    THE DEFENDANT:  I UNDERSTAND.

19    THE COURT:  ALSO, NO ONE IS GOING TO GIVE YOU ANY

20   BREAKS.  IF YOU ARE LOST IN PROCEDURE OR HAVE NO IDEA WHAT

21   YOU ARE DOING, I'M NOT GOING TO HELP YOU OUT.  YOU'RE NOT

22   GOING TO GET ANY SPECIAL CONSIDERATION.

23    THE DEFENDANT:  WHERE -- WHERE IN THE PROCEEDINGS

24   WOULD WE START OUT?  WOULD WE GO BACK TO THE BEGINNING?

25    THE COURT:  THERE WOULD BE NO DELAY.  I WON'T GIVE

26   YOU ANY TIME.  I'M NOT GOING TO DELAY THIS TRIAL.

27    THE DEFENDANT:  I FILED A MARSDEN MOTION TO RELIEVE

28   MS. WARREN FROM REPRESENTING ME, AND I WAS NOT GIVEN THAT

RIGHT.  SO WE'RE ALREADY AT TRIAL.  IT'S NOT BECAUSE I

HAVEN'T TRIED TO FIND A ALTERNATE PUBLIC DEFENDER, BUT THE

COURT JUST HASN'T GRANTED ME THAT PRIOR TO THIS.

     THE COURT:  RIGHT.  I UNDERSTAND.

     THE DEFENDANT:  IT'S NOT I'M DOING THIS OUT OF THE

BLUE.  I TRIED TO DO THIS EVEN BEFORE PRETRIAL, EVEN BEFORE

PRELIMINARY, ACTUALLY.

     THE COURT:  I UNDERSTAND.

     THE DEFENDANT:  WHY THE COURT HASN'T ALLOWED ME TO

GET A ALTERNATE PUBLIC DEFENDER IS BEYOND ME.  I HAVE ASKED

MS. WARREN CONTINUOUSLY FOR MY DISCOVERY.  SHE WANTS ME TO

TESTIFY.  HOW CAN I WHEN I HAVEN'T EVEN SEEN THE DISCOVERY

WHICH WOULD HELP ME IN MY TESTIMONY.

     MS. WARREN:  I'M CONCERNED ABOUT WHAT HE MIGHT SAY

WHILE THE PROSECUTOR IS STILL HERE.

     THE DEFENDANT:  I UNDERSTAND WHAT YOU'RE SAYING.

     THE COURT:  IF I GRANT YOU PRO PER STATUS TO

REPRESENT YOURSELF, I'M NOT GOING TO DELAY THE TRIAL.  WE

ARE GOING TO BRING THE JURY IN RIGHT NOW, WE ARE GOING TO

CONTINUE THE TRIAL.  SO YOU'LL BE BY YOURSELF.

     THE DEFENDANT:  I WOULD NEED TIME TO GO OVER

EVERYTHING THAT MS. WARREN HAS.

     THE COURT:  THE PEOPLE ARE GOING TO CALL THE

OFFICERS WHO STOPPED YOU IN THE CAR, APPARENTLY.  SO I WILL

GIVE MS. WARREN TIME TO COPY --

     THE DEFENDANT:  ARE YOU SAYING THAT I WILL --

     THE COURT:  -- WHATEVER DISCOVERY --

     THE DEFENDANT:  -- HAVE TO START --

```
 1          THE COURT:  -- WHATEVER DISCOVERY --
 2          THE REPORTER:  EXCUSE ME.
 3          MS. WARREN:  DON'T INTERRUPT --
 4          THE DEFENDANT:  OH, I WANT --
 5          MS. WARREN:  -- THE JUDGE.
 6          THE DEFENDANT:  I'M NOT --
 7          THE COURT:  HOLD ON.
 8          THE DEFENDANT:  I STILL --
 9          THE COURT:  STOP TALKING.
10          THE DEFENDANT:  WAIT, I --
11          THE COURT:  STOP TALKING.
12          THE DEFENDANT:  I WANT TO --
13          THE COURT:  STOP TALKING.
14          THE DEFENDANT:  -- GO PRO PER.
15          THE COURT:  OKAY.  THIS IS NOT BODING WELL FOR
16   GRANTING YOUR REQUEST TO REPRESENT YOURSELF.  IF YOU CAN'T
17   CONTROL YOURSELF AND STOP TALKING WHEN THE COURT ORDERS YOU
18   TO STOP TALKING, THEN YOU PROBABLY CAN'T REPRESENT
19   YOURSELF.
20          SO THE WITNESSES WHO ARE ABOUT TO TESTIFY HAVE
21   TO DO WITH THE STOP OF THE CAR.  SO IF I GRANT YOUR
22   REQUEST, I WILL GIVE MS. WARREN ENOUGH TIME TO GIVE YOU THE
23   MATERIALS THAT RELATE TO THAT.  AND THEN OVER THE LUNCH
24   HOUR, MS. WARREN CAN MAKE COPIES OF THE REST OF THE
25   DISCOVERY.  BUT I'M NOT GOING TO DELAY THIS TRIAL.  WE ARE
26   ALMOST AT THE END OF THE TRIAL.  SO IF YOU ARE READY TO
27   PROCEED RIGHT NOW WITH THE JURORS AND CONTINUE WITH NO
28   DELAY, I WILL -- I SUPPOSE I WILL GRANT YOUR REQUEST.
```

Prejudice

1      THE DEFENDANT:  MAY I SPEAK?

2      THE COURT:  YES.

3      THE DEFENDANT:  DO YOU UNDERSTAND WHEN I SAY THAT

4  I'VE TRIED TO RELIEVE MS. WARREN OF HER POSITION?

5      THE COURT:  I UNDERSTAND THAT YOU HAVE MADE MARSDEN

6  MOTIONS IN THE PAST AND THEY HAVE BEEN DENIED.

7      THE DEFENDANT:  OKAY.  AND I FEEL I HAVE THE

8  NECESSARY GROUNDS TO DO SO.

9      THE COURT:  WELL, WE'RE NOT GOING TO RELITIGATE

10  MARSDEN MOTIONS.  OTHER JUDGES MADE THOSE CALLS AND THEY

11  ARE DONE.  THEY'RE NOT COMING BACK.  IF YOU WANT TO

12  REPRESENT --

13      THE DEFENDANT:  I WOULD HAVE TO READ ALL THIS, OVER

14  THERE, COME BACK IN, CROSS-EXAMINE THE OFFICERS --

15      THE COURT:  YES.

16      THE DEFENDANT:  -- AND THEN TESTIFY WITHIN 20

17  MINUTES OR SO?

18      THE COURT:  YES.  WELL --

19      THE DEFENDANT:  THAT'S RIDICULOUS.

20      THE COURT:  WELL, THAT'S -- THAT'S WHAT'S ON THE

21  TABLE.

22      THE DEFENDANT:  THIS ALL --

23      THE COURT:  IF YOU ARE ASKING FOR A DELAY --

24      THE DEFENDANT:  THIS IS ALL --

25      THE COURT:  IF YOU ARE ASKING FOR A DELAY, I AM

26  PROBABLY NOT GOING TO GRANT YOUR REQUEST.

27      THE DEFENDANT:  HOW RIDICULOUS IS THIS?  EVEN IF I

28  ASK MS. WARREN FOR LEGAL ADVICE ON HOW TO MAYBE GET A

1   CONTINUANCE SO I CAN REPRESENT MYSELF PROPERLY, SHE
2   PROBABLY WOULDN'T EVEN ADVISE ME WITH THE RIGHT
3   INFORMATION.
4        THE COURT:  I'M NOT GOING TO GRANT A CONTINUANCE SO
5   YOU CAN REPRESENT YOURSELF.
6        THE DEFENDANT:  I KNOW, BUT I'M SURE THERE IS
7   SOMETHING I CAN DO TO GO BEYOND YOUR REFUSAL OF A
8   CONTINUANCE.
9        THE COURT:  NOT RIGHT NOW.  IF YOU LOSE THE TRIAL,
10  YOU CAN APPEAL MY DECISION, IF THAT'S WHAT HAPPENS.  BUT
11  I'M IN CHARGE OF THIS TRIAL RIGHT NOW.  THIS JURY HAS BEEN
12  GIVEN A TIME ESTIMATE.  WE ARE ALMOST DONE WITH THE
13  EVIDENCE PART OF THE TRIAL.  AND I'M NOT GOING TO DELAY THE
14  TRIAL.
15       THE DEFENDANT:  IF I GO PRO PER, SHE WON'T BE HERE?
16       THE COURT:  CORRECT.
17       THE DEFENDANT:  AND THEN I GET ALL OF THAT OVER
18  THERE?
19       THE COURT:  YOU WON'T GET ADDRESSES AND
20  IDENTIFYING --
21       THE DEFENDANT:  THAT'S FINE.  I'M NOT --
22       THE COURT:  YOU WILL GET NAMES, BUT YOU WON'T GET
23  ADDRESSES AND PHONE NUMBERS OF THE CIVILIANS.
24       THE DEFENDANT:  THAT'S FINE.
25       THE COURT:  BUT BY THIS AFTERNOON YOU'LL HAVE ALL
26  THE MATERIALS.
27       THE DEFENDANT:  WHAT I WOULD LIKE TO DO IS GO TO THE
28  PRO PER MODULE TO STUDY THIS.  I NEED LESS THAN A WEEK.

1    THE COURT:  I'M NOT GOING TO GIVE YOU THAT.  I'M NOT

2  DELAYING THIS TRIAL.  SO YOU TELL ME WHAT YOU WANT TO DO.

3    THE DEFENDANT:  I GUESS MOVE FORWARD.  THE PEOPLE

4  ARE HERE.

5    THE COURT:  WITH MS. WARREN?

6       (THE DEFENDANT AND HIS COUNSEL CONFER

7       SOTTO VOCE.)

8    THE DEFENDANT:  I DON'T WANT TO TESTIFY.  JUST

9  CONTINUE THE CASE.

10    THE COURT:  YOU WANT YOUR ATTORNEY?

11    THE DEFENDANT:  I WANT TO GO PRO PER.  IF I'M GOING

12  TO GET 20 MINUTES TO GO OVER FUCKING DISCOVERY --

13    THE COURT:  ALL RIGHT.  THAT'S FINE.

14       ALL THE JURORS ARE HERE?

15    THE CLERK:  NO, NUMBER 1 IS --

16    THE COURT:  WE'RE STILL MISSING A JUROR.

17    MS. WARREN:  WE NEED TO TALK ABOUT THE --

18    THE COURT:  YES.  GO AHEAD.

19    MS. WARREN:  9-1-1.  I MEAN -- I SHOULDN'T SAY THAT.

20  THE RECORDINGS FROM THE TRAFFIC STOP.

21    THE COURT:  GO AHEAD.

22    MS. NIZAMI:  I HAVE TWO RECORDINGS.  I HAVE PRINTED

23  OUT TRANSCRIPTS.  I HAVE REDACTED CERTAIN PORTIONS.

24  SPECIFICALLY, WHAT I'VE REDACTED ARE ANY MENTION OF

25  DEFENDANT'S PRIOR ARRESTS, HIS PRIOR CONVICTIONS.  SO I

26  HAVE REDACTED ALL THOSE PORTIONS.  THEY WILL BE SILENT ON

27  THE VIDEO, AND THEY HAVE BEEN TAKEN OUT OF THE

28  TRANSCRIPTS.

1   PERSON GET OUT OF THE SMALL SUV RESEMBLING THE DEFENDANT'S.

2   HE HAS SOMETHING ON HIS FACE AND AN OBJECT IN HIS HAND.

3   THAT IS CONSISTENT WITH WHAT THE DEFENDANT DID THAT NIGHT.

4   AND WHEN YOU SEE THAT PERSON COME BACK, HE NO LONGER HAS

5   SOMETHING COVERING HIS FACE AND HE NO LONGER HAS THAT

6   OBJECT IN HIS HAND.  CONSISTENT.  DEFENSE COUNSEL WANTS TO

7   DISTRACT YOU FROM THE EVIDENCE WE DO HAVE IN THIS CASE.

8   SHE WANTS YOU TO TAKE AT A LOOK AT EVERYTHING BUT WHAT YOU

9   DID HEAR IN COURT THAT'S NOT EVIDENCE.  EVIDENCE IS NOT

10  WHAT'S OUTSIDE THIS COURT.  EVIDENCE IS WHAT YOU HEARD HERE

11  IN COURT.  YOU ARE NOT SUPPOSED TO SPECULATE.  YOU ARE NOT

12  SUPPOSED TO THINK, OH, WHAT IF THIS PERSON HAD SOMETHING TO

13  SAY, WHAT IF THAT PERSON HAD SOMETHING TO SAY, BUT THEY ARE

14  NOT HERE TO SAY IT.  AND MY -- THIS IS MY BURDEN TO PROVE

15  THIS CASE TO YOU.  BUT DEFENSE HAS THE SAME SUBPOENA POWER

16  THAT THE PEOPLE DO.  AND YOU DIDN'T HEAR FROM ANYONE ELSE

17  IN THIS CASE.  BUT YOU HEARD IT DIRECTLY FROM THE PEOPLE

18  THAT ARE DIRECTLY AFFECTED.  YOU HEARD FROM OSCAR WHO WAS

19  DIRECTLY AFFECTED BY THE DEFENDANT'S CONDUCT.  YOU HEARD

20  FROM HARPREET WHO WAS DIRECTLY AFFECTED BY THE DEFENDANT'S

21  CONDUCT.  AND YOU HEARD FROM NANCY WHO WAS DIRECTLY

22  AFFECTED BY THE DEFENDANT'S CONDUCT.  YOU HEARD FROM THE

23  VICTIMS IN THIS CASE.  NOW, WITH RESPECT TO THE VIDEOS OF

24  THE CAR, THE PARKING LOT VIDEOS AS I REFER TO THEM, DEFENSE

25  REFERRED TO ME ABOUT WHEN WE WERE -- WHEN I WAS PRESENTING

26  EVIDENCE SAYING THAT I -- I HAD TOLD YOU IT'S NOT THE BEST

27  CD.  THAT'S NOT WHAT I SAID.  I SAID IT'S NOT THE BEST TV.

28  BUT YOU WILL HAVE ACCESS TO THESE CDS, AND YOU WILL HAVE



Alexander J. Canloss #BN5303

4-248-how-hassen Ad-Seg

P.O. Box 2210

Susanville, CA, 96127

MAR - 4 2022

First Street Federal Courthouse

350 W. 1st Street STE 4311

Los Angeles, CA, 90012-4701

LEGAL MAIL

US POSTAGE

$002.76°